UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| C&A INTERNATIONAL, LLC ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.   ) | Case No. 12-CV-180-JED-FHM |
| ) | |
| SOUTH BAY DISTRIBUTION, ) | |
| a/k/a ) | |
| SOUTHBAY DISTRIBUTION/LOGISTICS, ) | |
| a/k/a LOGISTICS TEAM, INC. ) | |
| ) | |
| **Defendant(s).** ) | |

## OPINION AND ORDER

Two related motions are now before the Court. The first is Defendant South Bay Distribution's ("South Bay") Motion to Dismiss or Transfer Venue (Doc. 18) and Brief in Support of the Motion to Dismiss or Transfer Venue (Docs. 19 and 20) (hereafter "defendant's motion"). There, South Bay argues that (i) the Court lacks personal jurisdiction over South Bay; (ii) venue is improper in this Court; (iii) the litigation should be transferred to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a); and (iv) plaintiff's fraud claims should be dismissed. The second is Plaintiff's Opposed Motion to Hold Defendant's Motion to Dismiss or Transfer Venue and Motion to Transfer Case to Other District in Abeyance Pending Discovery (Doc. 23) (hereafter "plaintiff's motion"). By plaintiff's motion, plaintiff seeks jurisdictional discovery for the purpose of establishing South Bay's contacts with the State of Oklahoma. For the reasons explained below, the Court grants plaintiff's motion. The Court shall withhold its ruling on defendant's motion pending the jurisdictional discovery authorized herein.

I.   BACKGROUND

Plaintiff C&A International, LLC ("C&A") is an Oklahoma limited liability company with its principal place of business in Tulsa County, Oklahoma. (Doc. 13, at 2). South Bay is a California corporation with its principal place of business in Walnut, California. (*Id.*). South Bay operates warehouses in the Los Angeles, California area as a third-party logistics company. (Doc. 24-2). Dan Maynard, a representative of C&A, contacted South Bay regarding storage of various products, including plastic trash cans, granite countertops, and associated components and carts, at its storage facility located in City of Industry, California (hereafter, the "warehouse"). (Doc. 19-1).

In late March of 2009, C&A and South Bay entered into an agreement whereby South Bay would store products at its warehouse and ship those products for C&A. James Lin, President of South Bay, signed the agreement in California and sent it via email to the owner of C&A, Loretta Murphy, who accepted and signed the agreement on March 27, 2009. (Docs. 24-1; 24-2). Under the agreement, once C&A received an order from a customer, it would create a bill of lading ("BOL") and a "Picking Ticket." (Doc. 24-13). C&A would then send the BOL and Picking Ticket to South Bay, which would fill the order and distribute the product by common carrier to C&A's customer. (*Id.*). All shipments were picked up by the common carriers from South Bay's California warehouse. (Doc. 19-1). No employee of South Bay ever traveled to Oklahoma in connection with performance of the agreement. (*Id.*).

After approximately 18 months, the relationship between the two companies soured. C&A filed the instant lawsuit, alleging, among other things, that South Bay made various warranties and misrepresentations regarding its care for the products stored at the warehouse, its

2

liability for those products if damaged, and the conditions by which the products would be stored.

## II. STANDARD

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). "The trial court, however, is vested with broad discretion" with respect to jurisdictional discovery. *Id*. "As with the court's handling of discovery in other stages of litigation, in the context of a [motion to dismiss for lack of jurisdiction]" . . . the district court is given "much room to shape discovery." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1188–89 (10th Cir. 2010) (internal quotation omitted). "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant. Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (ellipsis omitted) (citations omitted). "[T]he burden of demonstrating a legal entitlement to jurisdictional discovery – and the related prejudice flowing from the discovery's denial – [is] on the party seeking the discovery . . ." *Breakthrough Mgmt. Grp., Inc.*, 629 F.3d at 1189 n. 11.

## III. ANALYSIS

The question of whether C&A should be granted jurisdictional discovery is largely dependent on the issues raised in South Bay's motion to dismiss for lack of jurisdiction. As to South Bay's motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on

a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. *Id.*

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, as is the case here, C&A must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See* 12 *Okla. Stat.* § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)); *see also Hough v. Leonard*, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in

4

that state." *Conoco, Inc. v. Agrico Chem. Co.*, 115 P.3d 829, 835 (Okla. 2004) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon*, 205 F.3d at 1247 (quoting *World–Wide Volkswagen*, 444 U.S. at 291). A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id*. at 1247 (quoting *Burger King*, 471 U.S. at 472 (1985)). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." *Id*. at 1247 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984)). "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Monge v. RG Petro-Mach. (Group) Co. Ltd.*, 701 F.3d 598, 614 (10th Cir. 2012) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004).

  C&A argues that this Court has both specific (i.e. minimum contacts) and general jurisdiction (i.e. systematic and continuous contacts) over South Bay. South Bay contests both points. The facts presented by the parties with respect to specific jurisdiction are fairly straight-forward and, for the most part, are not in dispute. As to general jurisdiction, however, the parties disagree as to the nature of South Bay's contacts with Oklahoma, and what facts should be

considered by the Court in deciding whether general jurisdiction exists.[1] Accordingly, C&A seeks leave to conduct discovery regarding (i) defendant's contacts with Oklahoma related to its role in providing services to nationwide consignees such as, but not limited to, Walmart and Target; (ii) defendant's relationships with agents in Oklahoma, if any; (iii) defendant's shipment of products into Oklahoma through itself and/or common carriers; (iv) defendant's contracts with carriers in Oklahoma, if any; (v) defendant's sales agents in Oklahoma, if any; (vi) the volume of shipments to Oklahoma for which defendant is responsible; and (vii) the extent to which Oklahoma customers of defendant, if any, use defendant's website for business purposes. (Doc. 23). While some of plaintiff's requests for discovery are duplicative and/or beyond the scope of what would inform the determination of whether jurisdiction exists, there are several issues raised within the parties' jurisdictional briefing, the evidence submitted therewith, and the amended complaint (Doc. 13) which *will* inform that determination.

There is a dispute between the parties as to whether the actions of "Logistics Team Inc." or "Logistics Team" should be considered for purposes of whether general jurisdiction exists with respect to South Bay. C&A identifies "Logistics Team, Inc." as an "a/k/a" of South Bay Distribution in the style of its amended complaint. (Doc. 13, at 1). Within the amended complaint, however, C&A characterizes "Logistics Team, Inc." as something quite different, stating:

> *Defendant* Logistics Team, Inc. is a corporation with its principal place of business in Walnut, California. At times relevant herein, South Bay, following its merger with Atomic Box, CBS Warehouse, and ESDC, operated under its new name of Logistics Team, Inc.

---

[1] While the topics upon which C&A seeks jurisdictional discovery appear to be directed toward establishing general jurisdiction, the Court recognizes that discovery may also reveal information relevant to whether specific jurisdiction over South Bay exists.

(*Id.*, at 2, emphasis added). In this case, a summons was issued in the name of "South Bay Distribution, aka South Bay Distribution/Logistics, aka Logistics Team, Inc. c/o James Lin, Registered Service Agent."[2] (Doc. 15). South Bay has submitted the declaration of Michael Oliver in support of its dismissal motion. Mr. Oliver states that "South Bay is a separate entity from Logistics Team, named as [an] 'also known as' entity in the lawsuit." (Doc. 19-1, at ¶ 2). Mr. Oliver further states that "Logistics Team" is a trade name of "Amerifreight Inc.," which came into existence approximately two months after the contract between C&A and South Bay was executed.[3] (*Id.*, at ¶¶ 10-12). C&A's position is that Logistics Team and South Bay should be treated as the same entity for purposes of establishing general jurisdiction. To that end, C&A has submitted materials related to Logistics Team's advertising and alleged contacts with Oklahoma, which C&A argues establish general jurisdiction. (*See* Doc. 24-3 – 7). South Bay counters that Logistics Team's activity should not be considered by the Court as it is not a party to this lawsuit or to the contract between C&A and South Bay. (Doc. 25, at 3-4). Accordingly, there is a significant dispute as to the identity and relationship between South Bay and Logistics Team (or Logistics Team, Inc., as the case may be).[4]

---

[2] C&A amended its complaint to name South Bay Distribution, a California Corporation, as defendant rather than South Bay Distribution, a Delaware Limited Liability Company, and the summons was reissued to the correct defendant, South Bay Distribution, a California Corporation. (*See* Docs. 13, 14, and 15).

[3] Notably, Mr. Oliver does *not* state that "Logistics Team, *Inc.*" is a trade name of "Amerifreight Inc.," thus adding to the confusion, as it is unclear if the parties are referring to the same entity. This may be oversight or misdirection with respect to the relationship between South Bay and the company identified in exhibits 3 through 7 of C&A's response (described there only as "Logistics Team" – an entity which appears to have resulted from a merger involving South Bay). (*See* Doc. 24-3).

[4] Hereafter, the Court will refer only to "Logistics Team," as the parties have done in their briefing. The Court uses this term to refer to the entity identified in exhibits 3 through 7 of C&A's response brief (Docs. 24-3 – 24-7).

Various corporate affiliations and parent/subsidiary relationships can give rise to personal jurisdiction for a company based upon the actions of the related entity. For example, the actions of alter ego entities can confer jurisdiction on principal corporations "because the nature of the alter ego gives it implied actual authority to act for the corporation." *See, e.g., Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488 n.3 (10th Cir. 2012) (citing *Curtis Publishing Co. v. Cassel*, 302 F.2d 132, 138 (10th Cir. 1962). In addition, "[c]ompanies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005) (internal citation omitted); *see also Epps v. Stewart Info. Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) ("the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation . . . The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute.").

Accordingly, discovery with respect to the relationship between South Bay and Logistics Team and the timing and nature of the merger which South Bay was purportedly involved in would add clarity to the record and assist the Court in determining whether South Bay is subject to jurisdiction in Oklahoma. If further discovery indicates that Logistics Team's conduct should be attributable to South Bay, consideration of the issues raised by plaintiff about Logistics Team's alleged contact with Oklahoma may be appropriate in reaching a decision as to whether the Court has jurisdiction over South Bay. The resolution of that issue may also lead to the need for more discovery related to Logistics Team's contact with Oklahoma. If this limited discovery

does not reveal that Logistics Team's conduct should be attributed to South Bay for jurisdictional purposes, the Court will reach its decision on South Bay's dismissal motion without the need for further discovery.

Two other issues warrant limited jurisdictional discovery at this time. First, C&A has requested discovery with respect to the relationship between Dan Maynard, an employee of QestGroup and contracted sales representative of C&A, and South Bay in an attempt to determine whether Maynard may have been acting as an agent of South Bay in Oklahoma at or around the time plaintiff's cause of action arose. C&A has provided some evidence that Maynard may have been acting as an agent of South Bay at some point during the contracting parties' relationship. The discovery necessary to clarify this issue should not require significant effort or expense and could bear on the jurisdictional issue at hand. Second, plaintiff is entitled to discovery regarding whether, and to what extent, South Bay exercised control over agents in Oklahoma at or around the time plaintiff's cause of action arose.

The Court directs that C&A shall be given 60 days within which to complete the limited jurisdictional discovery discussed above. During this discovery period, C&A may take up to two (2) depositions and may serve written discovery on South Bay. All such discovery must be strictly limited to the following three issues:

- (i) the relationship between South Bay and Logistics Team and the timing and nature of the merger discussed in exhibit 3 of plaintiff's response brief (Doc. 24);
- (ii) the potential existence of an agency relationship between Dan Maynard and South Bay; and
- (iii) the extent of South Bay's agency relationships in Oklahoma at or around the time plaintiff's cause of action arose.

Jurisdictional discovery would be appropriate with respect to these three issues, as a more satisfactory showing of the facts is necessary as to these issues. *See Sizova*, 282 F.3d at 1326.

Upon completion of this discovery, the parties shall submit supplemental briefing regarding whether South Bay is subject to personal jurisdiction in Oklahoma based upon additional facts revealed, if any, by the jurisdictional discovery authorized herein. The Court expressly reserves its rulings with respect to all issues raised in South Bay's Motion to Dismiss or Transfer Venue and Brief in Support (Docs. 18, 19, and 20).

**IT IS THEREFORE ORDERED** that Plaintiff's Opposed Motion to Hold Defendant's Motion to Dismiss or Transfer Venue and Motion to Transfer Case to Other District in Abeyance Pending Discovery (Doc. No. 23) is **granted**, as provided herein. The Court reserves its rulings with respect to the issues raised in South Bay's Motion to Dismiss or Transfer Venue and Brief in Support (Docs. 18, 19, and 20).

**IT IS FURTHER ORDERED** that C&A shall have 60 days, which expires **April 15, 2013**, to complete the jurisdictional discovery authorized by this Opinion and Order. C&A shall submit a supplemental brief of no more than 15 pages, exclusive of exhibits, regarding whether South Bay is subject to personal jurisdiction in Oklahoma based upon additional facts, if any. South Bay will have 21 days to file its response to C&A's supplemental brief, subject to the same page limitation. C&A may, if necessary, file a short reply brief of no more than five (5) pages within 14 days of South Bay's response brief.

**IT IS SO ORDERED** this 12th day of February, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE